**Leonel BUENROSTRO, et al.,**
**Plaintiffs, Appellees,**

v.

**Pablo COLLAZO, a/k/a Pablo Collazo**
**Marrero, et al., Defendants,**
**Appellants.**

**No. 91–2337.**

United States Court of Appeals,
First Circuit.

Heard July 29, 1992.
Decided Aug. 26, 1992.

John F. Nevares, with whom Annabel Rodriguez, Sol. Gen., Reina Colon, Asst. Sol. Gen., Silvio Cancio, and Saldana, Rey & Alvarado Hato Rey, P.R., were on brief, for defendants, appellants.

Francisco A. Besosa, with whom Goldman Antonetti Ferraiuoli & Axtmayer, Santurce, P.R., was on brief, for plaintiffs, appellees.

Before SELYA and STAHL, Circuit Judges and SKINNER,* District Judge.

* Of the District of Massachusetts, sitting by designation.

**SELYA, Circuit Judge.**

Plaintiff-appellee Leonel Buenrostro, portraying himself as a victim of mistaken identity and misplaced zeal, sued a number of police officers under 42 U.S.C. § 1983 (1988).[1] The defendants unsuccessfully attempted to pretermit the suit on qualified immunity grounds. The district court denied their motion for summary judgment. We affirm.

## I

Consistent with the method of Fed. R.Civ.P. 56(c), we take the record in the light most hospitable to the party opposing summary judgment and indulge all reasonable inferences favorable to him. *See Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990).

On March 29, 1988, the extradition squad raided Buenrostro's home, hauled him out, and arrested him pursuant to a "wanted person" request (WPR) from the State of New York. The police admittedly acted in the absence of an arrest warrant, a search warrant, or any exigent circumstances sufficient to justify the intrusion.

As a result of this arrest, appellee was handcuffed, taken to police headquarters, and locked in a cell. Subsequently, a local magistrate determined that there was probable cause to detain him while extradition proceedings ran their course. Despite a number of red flags—e.g., Buenrostro's claims that the probable-cause determination was based on false accusations mouthed by members of the extradition squad, his continuing protests of innocence, significant discrepancies between the description of the suspect mentioned in the WPR and Buenrostro's physical characteristics, and available (but unused) fingerprint evidence—Buenrostro remained immured in what the district court termed "horrific conditions" for thirty-one days. Finally, a more thorough examination of

New York's extradition request was undertaken, and the Puerto Rican authorities admitted that they had arrested the wrong man. Buenrostro was released.

Not long thereafter, Buenrostro sued for damages. He alleged in his complaint that his constitutional rights had been infracted in various ways. He also asserted pendent claims. In due course, the appellants sought *brevis* disposition based on qualified immunity. When the district court denied their Rule 56 motion, *Buenrostro v. Collazo,* 777 F.Supp. 128 (D.P.R.1991), they filed this appeal.

## II.

### A.

Ordinarily, we would not entertain an immediate appeal from a denial of summary judgment. *See, e.g., Fisichelli v. City Known as the Town of Methuen,* 884 F.2d 17, 18 (1st Cir.1989); *see also* 28 U.S.C. § 1291 (1988) ("[t]he courts of appeals ... shall have jurisdiction of appeals from all *final* decisions of the district courts") (emphasis supplied). Nevertheless, the denial of a government actor's dispositive pretrial motion premised on qualified immunity falls within a narrow exception to the finality principle and is, therefore, immediately appealable. *See Mitchell v. Forsyth,* 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–18, 86 L.Ed.2d 411 (1985); *Roque–Rodriguez v. Lema Moya,* 926 F.2d 103, 105 (1st Cir.1991); *Fisichelli,* 884 F.2d at 18. The window of opportunity, however, is tiny. "Notwithstanding that we have jurisdiction to review the denial of qualified immunity midstream, any additional claim presented to and rejected by the district court must independently satisfy the collateral-order exception to the final judgment rule in order for us to address it on an interlocutory appeal." *Roque–Rodriguez,* 926 F.2d at 105 (citations

---

1. The defendants include Pablo Collazo Marrero, Angel Morales Gonez, Edwin Teruel, and Jose M. Collazo, members of the Puerto Rico Police Department's Division of Special Arrests and Extraditions; Armando Tapia Suarez, the head of that Division; and Carlos Lopez Feliciano, the Superintendent of Police. Although other defendants were also sued, these six officers are the sole appellants in this proceeding. For ease in reference, we disregard for the time being that Buenrostro's conjugal partnership and family members are named plaintiffs and treat Buenrostro as if he alone was the plaintiff-appellee.

and internal quotation marks omitted); *see also Domegan v. Fair*, 859 F.2d 1059, 1061–62 (1st Cir.1988).

In this case, there is no other basis for earlier-than-usual review. It follows inexorably that, for present purposes, we must focus exclusively upon the question of whether the defense of qualified immunity, as invoked by the appellants, shielded them from liability for money damages, and from the concomitant burden of a trial, arising out of the alleged constitutional deprivation. *See Roque–Rodriguez*, 926· F.2d at 105–06.

### B.

Appealability aside, appellate review of district court orders granting or denying summary judgment works the same way in qualified immunity cases as in other cases. *See Morales v. Ramirez*, 906 F.2d 784, 785 (1st Cir.1990); *Amsden v. Moran*, 904 F.2d 748, 752 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). District court orders granting or denying *brevis* disposition are subject to plenary review.[2] *Griggs–Ryan v. Smith*, 904·F.2d 112, 115 (1st Cir.1990); *Garside*, 895 F.2d at 48.

### III

### A.

Through the medium of qualified immunity, the law strives to balance its desire to compensate those whose rights are infringed by state actors with an equally compelling desire to shield public servants from undue interference with the performance of their duties and from threats of liability which, though unfounded, may nevertheless be unbearably disruptive. *See Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). Hence, state officials exercising discretionary authority are entitled to qualified immunity insofar as their conduct does not transgress clearly established constitutional or federal statutory rights of which a reasonably prudent official should have been aware. *See Harlow*, 457 U.S. at 818, 102 S.Ct.·at 2738; *Roque–Rodriguez*, 926 F.2d at 107. In this context, the phrase "clearly established" has a precise definition: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *accord Amsden*, 904 F.2d at 752.

In analyzing a qualified immunity defense, a court must ascertain whether the plaintiff has alleged, with the requisite particularity, that a state actor violated some right emanating from federal law.[3] *See Siegert v. Gilley*, —— U.S. ——, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Amsden*, 904 F.2d at 752. The next step is to ascertain whether the right at issue was "clearly established" at the time of infringement. *See Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. If·it was, an inquiring court can then presume that the defendant knew, or should have known, that his conduct was beyond the pale. *See Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738–39; *Amsden*, 904 F.2d·at 752.

---

**2.** We recognize that, in some relatively rare instances in which Rule 56 motions might technically be granted, the district courts occasionally exercise a negative discretion in order to permit a potentially deserving case to be more fully developed. *See, e.g., McLain v. Meier*, 612 F.2d.349, 356 (8th Cir.1979); *McInnis v. Harley-Davidson Motor Co.*, 625 F.Supp. 943, 958 (D.R.I.1986). We express no opinion on whether this negative discretion can flower in a case that turns on qualified immunity, nor do we speculate about what standard of review might then obtain.

**3.** At the summary judgment stage, the allegation must, of course, be substantiated by competent evidence sufficient to create a genuine issue of· material fact. *See Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *see also Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815.

### B.

■ The protections of the Fourth Amendment are fundamental to the rights of all American citizens and apply unreservedly in Puerto Rico. *See Torres v. Puerto Rico,* 442 U.S. 465, 471, 99 S.Ct. 2425, 2429, 61 L.Ed.2d 1 (1979). That prophylaxis guarantees, *inter alia,* every person's right to be free from unreasonable searches and seizures. *See Payton v. New York,* 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980). Warrantless searches or seizures occurring within a person's home are "presumptively unreasonable," *id.* at 586, 100 S.Ct. at 1380—a postulate which was indelibly etched in jurisprudential granite at the time of Buenrostro's arrest. *See id.; see also Santiago v. Fenton,* 891 F.2d 373, 386 (1st Cir.1989) (discussing state of the law in 1983); *Wagenmann v. Adams,* 829 F.2d 196, 209 (1st Cir.1987) (similar).

*Payton* sends the clearest signal for our purposes. There, the Supreme Court held that a non-consensual, non-exigent, warrantless entry into a home to effectuate an arrest transgressed the Fourth Amendment, notwithstanding that probable cause sufficient to justify the same arrest in a more public arena may have existed. *Payton,* 445 U.S. at 590, 100 S.Ct. at 1382; *see also Minnesota v. Olson,* 495 U.S. 91, 95, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85 (1990) (describing *Payton* as holding "that a suspect should not be arrested in his house without an arrest warrant"); *New York v. Harris,* 495 U.S. 14, 17–18, 110 S.Ct. 1640, 1642–43, 109 L.Ed.2d 13 (1990) (*Payton* "drew a line" prohibiting police from entering a person's home without a warrant); *United States v. Beltran,* 917 F.2d 641, 642 (1st Cir.1990) (apart from exigent circumstances or a consensual entrance, the Constitution requires the police to obtain a warrant "before entering a person's home to make an arrest"). Absent some legally cognizable justification, then, appellants violated a clearly established constitutional

right when they unceremoniously hauled the plaintiff from hearth and home.

### C.

■ Appellants attempt to salvage their qualified immunity defense by asserting various justifications for their actions. They claim, first and foremost, that they had probable cause to believe that Buenrostro was a fugitive from justice and, hence, to arrest and detain him. That is not, however, the dispositive criterion. Probable cause, without more, cannot legitimate a warrantless entry into a suspect's home. *See Olson,* 495 U.S. at 95, 110 S.Ct. at 1687; *Payton,* 445 U.S. at 587–90, 100 S.Ct. at 1380–82.

■ Appellants' remaining contentions can be grouped. They contend that the wanted person request was the functional equivalent of an arrest warrant.[4] But it seems obvious to us that, in the context of seizing an individual within the confines of his own home, a wanted person request circulated by an out-of-state police department differs significantly from an arrest warrant issued by a neutral, detached magistrate within the jurisdiction where the dwelling is located.

Alternatively, appellants contend that they entered the house with Buenrostro's consent—a datum which, if true, would obviate the need for a warrant. Buenrostro, however, vehemently denies that he consented to the intrusion. At the summary judgment stage, therefore, the district court could not resolve the issue against him. *See, e.g., Unwin v. Campbell,* 863 F.2d 124, 136 (1st Cir.1988) (if the record reveals a genuine dispute over a fact-specific question essential to the qualified immunity inquiry, summary judgment cannot be granted).

■ What is more, the grouped contentions are both infected by an incurable strain of procedural default. In the court below, appellant described the qualified im-

---

**4.** If it were correct, this contention would likely carry the day. *See, e.g., Steagald v. United States,* 451 U.S. 204, 214 n. 7, 221, 101 S.Ct. 1642, 1648 n. 7, 1652, 68 L.Ed.2d 38 (1981)

(valid arrest warrant may justify apprehension of suspect in his own home, notwithstanding the absence of a search warrant); *Payton,* 445 U.S. at 602–03, 100 S.Ct. at 1388 (similar).

munity issue as being "simply *whether the police officers, at the time they arrested the plaintiff, had probable cause to believe that plaintiff had violated the law.*" Memorandum in Support of Motion for Summary Judgment (Memorandum) at 18 (emphasis in original); *see also id.* at 16. They eschewed any reliance on the WPR as a valid proxy for a conventional arrest warrant. Their moving papers nowhere suggested, let alone documented, that Buenrostro consented to the entry into his home. Thus, the "arrest warrant" and "consent" arguments are by the boards for purposes of this appeal. *See McCoy v. Massachusetts Inst. of Technology,* 950 F.2d 13, 22 (1st Cir.1991) (arguments made in a perfunctory or incomplete manner in the court below are deemed waived on appeal), *cert. denied,* — U.S. —, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992); *Clauson v. Smith,* 823 F.2d 660, 666 (1st Cir.1987) (theories not advanced in the district court cannot be pressed for the first time on appeal).

■ We will not paint the lily.[5] On this scumbled record, the district court acted with impeccable propriety in rejecting the qualified immunity defense and refusing to enter a summary judgment predicated thereon.

---

**5.** It should be noted that two of the appellants, Tapia Suarez and Lopez Feliciano, were supervisors, not directly involved in Buenrostro's arrest. In moving for summary judgment, however, they did not suggest that their involvement should be judged by a different standard; instead, they were content to lump themselves with the members of the extradition squad. We have repeatedly held that, if a defendant wishes to be separated from the pack and treated independently from his codefendants regarding qualified immunity, it is necessary that he make the distinction and present an appropriate argument to that effect in the trial court. *See Brennan v. Hendrigan,* 888 F.2d 189, 193 n. 2 (1st Cir.1989); *Domegan,* 859 F.2d at 1065. Since appellants' moving papers did not attempt to carve out any such differential niche in respect to either Tapia Suarez or Lopez Feliciano, we treat them on a par with the arresting officers.

**6.** The *Baker* Court wrote:
We may even assume, *arguendo,* that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid war-

## D.

Although our analysis to this point disposes of the appeal, we add an eschatocol of sorts. Much of the parties' briefing and argumentation ventures beyond the easily visualized Fourth Amendment violation and discusses whether an additional constitutional deprivation resulted from the sheer length of Buenrostro's imprisonment. *See Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) (dictum).[6] Given the posture of this appeal, however, the issue is a dead letter. We explain briefly.

■ In the court below, appellants premised their qualified immunity defense strictly and solely on what they claimed was the officers' objectively reasonable conduct in effectuating Buenrostro's arrest.[7] *See* Memorandum at 14–19. They cannot now switch horses and argue that they are entitled to qualified immunity on the alleged *Baker* violation. Qualified immunity is, after all, an affirmative defense, and the "right" to have it determined in an intermediate appeal can be waived if it is not properly asserted below. *See, e.g., Roque–Rodriguez,* 926 F.2d at 105–06; *Fisichelli,* 884 F.2d at 18–19 & n. 2.

---

rant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty ... without due process of law."
*Baker,* 443 U.S. at 145, 99 S.Ct. at 2694–95 (dictum); *see also id.* at 148, 99 S.Ct. at 2696 (Blackmun, J., concurring).

**7.** The district court, following appellants' lead, *did not address the possibility of qualified immunity vis-a-vis the alleged Baker violation* but merely rejected appellants' effort to jettison that allegation for failure to state an actionable claim. *See Buenrostro,* 777 F.Supp. at 136 (holding that the plaintiff, in connection with his *Baker* theory, "has stated facts sufficient to state a cause of action for ... deliberate indifference"). Since we are operating under the *Mitchell* exception to the finality principle, we lack jurisdiction to review that ruling at the present time. *See Roque–Rodriguez,* 926 F.2d at 105–06. Thus, we decline to speculate, here and now, whether the *Baker* dictum limns a potentially viable cause of action; or, if it does, whether such a claim can be supported on the facts *sub judice.*

■ At any rate, the Supreme Court has made it crystal clear that principles of causation borrowed from tort law are relevant to civil rights actions brought under section 1983. *See, e.g., Malley v. Briggs,* 475 U.S. 335, 344 n. 7, 106 S.Ct. 1092, 1098 n. 7, 89 L.Ed.2d 271 (1986); *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961); *see also Wagenmann,* 829 F.2d at 212–13; *Springer v. Seaman,* 821 F.2d 871, 876–79 (1st Cir.1987). Since a jury could conceivably find a causal nexus between the unlawful arrest and the consequent imprisonment, the particulars of the imprisonment issue will have to be litigated. Hence, it would serve no useful purpose to address, in the isthmian confines of an interlocutory *Mitchell*-type appeal, whether a *Baker* violation also occurred. In short, once it is determined that the case must go forward on the Fourth Amendment issue, the length and circumstances of Buenrostro's detention are best examined at trial as part of the determination of damages flowing from the allegedly unlawful arrest. *Cf., e.g., Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815 (as long as "the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law" and the plaintiff adduces "evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts," the doctrine of qualified immunity will not shield a state actor from trial).

### IV

We need go no further. On this record, the appellants are not entitled to qualified immunity on the Fourth Amendment claim.[8]

Affirmed.

---

**8.** In this case, there seem to be additional facts, not yet fully developed and-or resolved, which could potentially inform the ultimate decision on qualified immunity. Hence, the defendants remain free to adduce additional proof at trial in an effort to demonstrate that they, or some among them, should be held harmless from damages by the doctrine of qualified immunity. *See, e.g., Vazquez Rios v. Hernandez Colon,* 819 F.2d 319, 329 (1st Cir.1987).