Voudry v. Brackett                    CV-93-249-JD   01/10/95
             UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE


John M. Voudry, et al.

        v.                           Civil No. 93-249-JD

James Brackett, et al.


                           O R D E R


     The plaintiffs, John M. Voudry, Mark E. Hoffman, John L.

Matulevich, John G. Sears, William B. Getman, Henry Gubnitsky and

Gregg Wolf, have brought a civil rights action pursuant to 42

U.S.C. §§ 1983, 1988 and the First, Fourth and Fourteenth

Amendments against officers known and unknown employed by the

city of Nashua and the state of New Hampshire.  The action names

as defendants James Brackett, Neil Casale, Robert Johnson, John

Doe ("local officers") and John McMasters and Richard Roe[1]

("state officers") individually and in their capacities as police

officers.[2]  The defendants now move for summary judgment

_____

     [1]John Doe and Richard Roe respectively represent unknown
members of the local and state police forces.

     [2]On November 29, 1994, the court dismissed the action
against the state officers in their official capacity and
provided the plaintiffs' with notice and an opportunity to
respond to the court's concerns regarding the action against the
local officers in their official capacity.  On December 21, 1994,
the court was notified by counsel for the plaintiffs that they
did not intend to pursue action against the local officers in
their official capacities.  The court therefore dismisses the
action against the local officers in their official capacities

(documents nos. 29 and 30).  For the following reasons both motions are granted.

## Background

Prior to October 1991, the FDIC acquired several New Hampshire banks, including Nashua Trust Bank ("Nashua Trust"), located in Nashua.  To secure the takeover of these banks, the FDIC hired the plaintiffs and several others to act as security guards.  The plaintiffs were associated with Burns International Security Services of New York ("Burns").

New Hampshire law requires persons to obtain a license from the Commissioner of Safety prior to working as a security guard. N.H. Rev. Stat. Ann. ("RSA") § 106-F:6 (1990 & Supp. 1992).  At the time of the takeovers, however, there was an exclusion from the licensing requirement for "any unarmed security guard employed solely to secure the premises of his employer."  RSA § 106-F:2 (1990).[3]

On October 9, 1991, Stephen J. Judge, Senior Assistant Attorney General, forwarded the following letter to an FDIC attorney:

_____

sua sponte.

[3]The section was amended in 1992.  RSA § 106-F:2 (Supp. 1992).

2

> Enclosed is a copy of RSA 106-F. As we have discussed, there is an exclusion in RSA 106-F:2 for <u>unarmed</u> guards securing the premises of their employer. You have indicated to me that FDIC will be the owner of the premises and the employer of the guards. It is imperative that the guards be <u>unarmed</u>. Please ensure that all necessary individuals at FDIC and particularly the security guards understand that they must be unarmed.

<u>See</u> Memorandum of Law in Support of Motion to Dismiss by Defendants Brackett, Casale, Johnson, Doe and Roe ("Motion to Dismiss"), Appendix B (Facsimile from Stephen Judge). On October 10, the security guards met in New Hampshire where they were briefed by the FDIC and each given a copy of the Judge letter. The plaintiffs were then sent to work at Nashua Trust.

That same day, Defendant McMasters, a sergeant with the New Hampshire State Police, was notified by the operator of New England Detective Agency, a security guard company, that unlicensed security guards employed by Burns were coming to New Hampshire to assist with the FDIC takeovers. McMasters Interrogatories, No. 12. McMasters was authorized by his superior to issue a teletype to state and local law enforcement. <u>See</u> <u>id.</u>, Teletype, State Officers' Motion for Summary Judgment, Exhibit D. Later that day, the Nashua police received the teletype which indicated that security officers employed to secure area banks, including Nashua Trust, might not be properly licensed. <u>See</u> Teletype, State Officers' Motion for Summary

Judgment, Exhibit D.  The teletype requested those departments with banks undergoing takeover in their jurisdiction to verify the "license status" of the security guards.  Id.  The teletype included a phone number for obtaining license verification.  Id.

Defendants Johnson, Casale and the officer(s) known for purposes of this litigation as defendant John Doe were dispatched to the bank.  They were met by an FDIC official and Gubnitsky, the Burns representative, and shown copies of the Judge letter.  Voudry Affidavit, ¶¶ 10, 11.  The officers left the bank but eventually returned and arrested the plaintiffs for performing security guard services without a license.

Following the arrests, the plaintiffs initiated litigation. In response, the local officers and defendant Richard Roe brought a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), on qualified immunity grounds.  The court converted the motion to dismiss into a motion for summary judgment, giving each party an opportunity to submit additional information.  After additional evidence was submitted, the court denied the motion, concluding that the local officers failed to show they were entitled to qualified immunity because they offered no uncontested objective facts that would lead a reasonable officer to believe the plaintiffs had violated the law.  The court then limited discovery to the issue of qualified immunity to promote prompt

4

resolution of the issues.  These motions followed.

## Discussion

The local officers argue they are entitled to qualified immunity for their actions on October 10, 1990, because they could have reasonably believed they had probable cause to arrest the plaintiffs.  Local Officers' Motion for Summary Judgment at 1.  The state officers similarly argue that the plaintiffs' Fourth Amendment claims fail on the merits because probable cause existed to effect the arrest.  State Officers' Motion for Summary Judgment at 1-2.  In addition, the state officers argue that the plaintiffs' First and Fourteenth Amendment claims should be dismissed because they have set forth no facts to support these claims.  Id.  The plaintiffs' counter that the defendants are not immune because the local officers had neither an arrest warrant nor probable cause to arrest and therefore knowingly violated the plaintiffs' rights.  See Affidavit of James D. Linnan, ¶¶ 23, 34-35.

## I.  Fourth Amendment Claims

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate any clearly established

statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To be "clearly established," the contours of the right must be sufficiently clear so that a reasonable official would understand his or her actions violate that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987). When deciding if a defendant is entitled to qualified immunity, the court does not consider whether a defendant actually violated a plaintiff's constitutional rights but focuses solely on whether the defendant's behavior was "objectively reasonable, as a matter of federal law," at the time and under the circumstances of the action at issue. See Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 228 (1st Cir. 1992); see also Amsden v. Moran, 904 F.2d 748, 751 (1st Cir. 1990), cert. denied, ___ U.S. ___, 111 S. Ct. 713 (1991).[4] Mistakes in judgment are protected as long as they are reasonable. Hunter, ___ U.S. ___, ___, 112 S. Ct. 534, 537

---

[4]The objective legal reasonableness standard eliminates from the court's consideration allegations regarding a government official's subjective state of mind, such as bad faith or malicious intent. Floyd v. Farrell, 765 F.2d 1, 4 (1st Cir. 1985). As such, the court notes the plaintiffs' allegation of ulterior motives is not relevant to the court's decision of whether the qualified immunity defense is applicable. In addition, the objective legal reasonableness of the local officer's conduct is not measured against their actual knowledge of the constitutional standards and the probable constitutionality of the actions taken, but rather against a relatively uniform level of "presumptive knowledge" of constitutional standards. Floyd, 765 F.2d at 4-5.

6

(per curiam) (1991); <u>Anderson</u>, 483 U.S. at 641. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>Hunter</u>, ___ U.S. at ___, 112 S. Ct. at 537 (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 343, 341 (1986)).

The court, not the jury, is responsible for deciding the question of immunity, and must make the decision as long before trial as feasible. <u>Hunter</u>, ___ U.S. at ___, 112 S. Ct. at 537. When a defendant uses qualified immunity as a basis for summary judgment, however, the court must remain "[c]onsistent with the method of Fed. R. Civ. P. 56(c) . . . ." <u>Buenrostro v. Collazo</u>, 973 F.2d 39, 41 (1st Cir. 1992). As a result, the court grants summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The defendants bear the burden of establishing the lack of a genuine issue of material fact.[5] <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Quintero de Quintero</u>, 974 F.2d 226, 227-28. The court cannot resolve factual issues in the movants' favor,

_____

[5]It is plaintiff's burden to demonstrate defendant's infringement of a "clearly established" federal right. <u>Quintero de Quintero</u>, 974 F.2d at 228; <u>Castro-Aponte v. Ligia-Rubero</u>, 953 F.2d 1429, 1430 (1st Cir. 1990).

<u>Buenrostro</u>, 973 F.2d at 43 (citing <u>Unwin v. Campbell</u>, 863 F.2d 124, 136 (1st Cir. 1988)), but rather views the entire record in the light most favorable to the plaintiffs, "`indulging all reasonable inferences in [their] favor.'" <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990), <u>cert. denied</u>, ___ U.S. ___, 112 S. Ct. 2965 (1992).

A. Warrantless Arrest

The plaintiffs claim the local officers violated their Fourth Amendment rights by conducting a warrantless arrest. A warrantless arrest is not a <u>per se</u> violation of an established right. 2 Wayne R. Lafave, Search and Seizure § 5.1(b) (2d Ed. 1987). The plaintiffs were arrested for violating RSA § 106-F:2, a misdemeanor offense. RSA § 106-F:16 (1992). In New Hampshire, officers may make warrantless misdemeanor arrests as long as there is probable cause to believe the persons arrested committed the violation in their presence. RSA § 594:10 I(a) (1986 & Supp. 1992). Because the plaintiffs were acting as security guards at the time and place of the arrest, the alleged offense necessarily occurred in the presence of the arresting officers. Therefore, the warrantless arrest only violated the plaintiffs' statutory or constitutional rights if the local officers had no basis to

8

believe there was probable cause to arrest the plaintiffs.  As a result, the viability of the claim is dependent on the probable cause analysis set forth below.

B. Probable Cause

The plaintiffs' primary claim is based on an alleged violation of the Fourth Amendment right to be free from unreasonable searches and seizures.  It is well established that the police must have more than mere suspicion in order to make an arrest with or without a warrant.  Wong Sun v. United States, 371 U.S. 471, 479 (1963).  An arrest must be supported by probable cause.  Beck v. Ohio, 379 U.S. 89, 91 (1964).

The qualified immunity defense is not burdensome.  Ricci v. Urso, 974 F.2d 5, 6 (1st Cir. 1992).  The defendants do not have to show that there was probable cause for the arrests, but only that "objectively reasonable grounds" existed such that "a reasonably competent police officer could have believed probable cause existed."  Id. at 6-7.  "[S]o long as probable cause is arguable," the officers are protected.  Id. at 7.  The defendants can meet their burden by showing that, at the time of the arrest, the facts and circumstances within the local officers' personal knowledge or obtained from a trustworthy source would lead a reasonably prudent person to believe there had been a violation

9

of the law.  Hunter v. Bryant, ___ U.S. ___, ___, 112 S. Ct. at 537.

The court, drawing every reasonable inference in the plaintiffs' favor, must determine whether it was objectively reasonable for the local officers to believe they had probable cause to arrest the plaintiffs for violating the licensing statute.  The local officers have submitted twenty-five exhibits in support of their contention that it was at least arguable for them to believe that the plaintiffs were acting as security guards, had no licenses to act as such, and were not covered by the exclusion.  The plaintiffs do not contest that they were acting as security guards at the bank and were without licenses at the time the incident occurred.  Brackett Affidavit, ¶ 4; Opposition to Local Officers' Motion for Summary Judgment at 2.  Thus, the inquiry becomes whether there were objectively reasonable grounds for the local officers to conclude the plaintiffs were not employed to secure the premises of their employer and therefore outside the scope of the exclusion to RSA § 106-F:6.

The court finds that the defendants could have reasonably believed they had probable cause to arrest the plaintiffs.  The local officers received a teletype message from the New Hampshire State Police stating that there may be an ongoing violation of

10

RSA § 106-F:6 committed by personnel employed at banks being taken over by the FDIC. Brackett Affidavit, ¶¶ 2, 3, 4. The teletype requested that the status of personnel be verified. Id. The plaintiffs, all of whom refer to themselves as Burns employees (Voudry Affidavit, ¶ 3, 7; Sears Affidavit, ¶ 4; Wolf Affidavit, ¶ 3; Hoffman Affidavit, ¶ 4; Gubnitsky Affidavit, ¶ 4, 5), were wearing Burns uniforms consisting of a blue blazer, grey trousers, a white shirt, black shoes and a Burns photo identification card at the time the local officers arrived at the bank to investigate. Wolf Affidavit at 17; Voudry Interrogatories, No. 7; Wolf Interrogatories, No. 7; Hoffman Interrogatories, No. 7; Matulevich Interrogatories, No. 7; Sears Interrogatories, No. 7.

Moreover, despite the plaintiffs' contentions, the Judge letter did not establish that the plaintiffs were covered by the exclusion to RSA § 106-F:6. The letter made no reference to any particular bank or any particular guard. Nothing in the Judge letter stated or even intimated that the plaintiffs were FDIC employees. In fact, the letter did no more than state the relevant law, that is, if the FDIC was both owner of the premises and employer of the guards, then, assuming all other criteria were met, the guards would be covered by the exclusion. Given these circumstances, it was reasonable for the local officers to

11

believe that the plaintiffs were employed by Burns, not the FDIC, and guarding the premises in violation of local law.

The plaintiffs argue that the local officers should not be granted qualified immunity "on the fine legal distinction of whether or not the plaintiffs were actually employed by the FDIC." Opposition to Local Officer's Motion for Summary Judgment at 3. The plaintiffs assert that in "spirit" they were employees of the FDIC in compliance with the statute. Id. However, the plaintiffs' recognition that a fine-line distinction existed at the time of arrest and that they were in compliance with the spirit and purpose though not necessarily the letter of the statute gives further credence to the defendants' contention that probable cause was arguable. The local officers are entitled to qualified immunity.

The plaintiffs' also assert a Fourth Amendment claim against the state officers. The state officers had no direct involvement in the arrests. Even assuming, however, that their actions in issuing the teletype somehow led to the arrests, because the arrests are supported by probable cause, the state officers are also entitled to qualified immunity.

## II. First and Fourteenth Amendment Claims.

The state defendants also argue that the plaintiffs "present

12

no fact which would make out a claim under any provision of the First Amendment nor establish a procedural or substantive due process violation under the Fourteenth Amendment." State Officers' Memorandum in Support of Motion for Summary Judgment at 23-24. The court agrees. The plaintiffs have made no effort to respond to the state officers' motion for summary judgment on the First and Fourteenth Amendment claims and have failed to provide support for these claims in their pleadings and throughout the pendency of this action. Accordingly, the plaintiffs have, in effect, treated these claims as waived. See, e.g., Alan Corp. v. International Surplus Lines, Inc., 22 F.3d 339, 343 n.4. (1st Cir. 1994). Summary Judgment is granted for the defendants on the First and Fourteenth Amendment claims.

## Conclusion

The claims brought against the local officers in their official capacities are dismissed sua sponte. All defendants are entitled to qualified immunity from the plaintiffs' Fourth Amendment claims. The First and Fourteenth Amendment claims are without any factual support. Therefore, the motions for summary judgment (documents nos. 29 and 30) are granted. The Clerk of

13

Court shall enter final judgment.

    SO ORDERED.


                                    _____
                                    Joseph A. DiClerico, Jr.
                                    Chief Judge
January 10, 1995

cc:  Andru H. Volinsky, Esquire
     James D. Linnan, Esquire
     Robert E. McDaniel, Esquire
     Claire L. Gregory, Esquire

14