**Lori–Ann MOLLOY**

v.

**Wesley BLANCHARD; Board of Public Safety; Lincoln Chafee; and City of Warwick.**

**Civ. A. No. 94–0527 P.**

United States District Court, D. Rhode Island.

Nov. 22, 1995.

Ina P. Schiff, Providence, RI, for plaintiff.

Marc DeSisto, Providence, RI, for defendant.

## OPINION AND ORDER

PETTINE, Senior District Judge.

This case concerns the summary suspension of the plaintiff police officer from the City of Warwick Police Department for allegedly failing to cooperate with the Rhode Island State Police in the investigation of a murder. The plaintiff alleges, pursuant to 42

U.S.C. § 1983, violations of her constitutional rights to procedural and substantive due process. In addition, she alleges a plethora of other claims, including First Amendment and Equal Protection Claims under § 1983, disparate treatment and disparate impact claims under Title VII, Rhode Island state law discrimination and contract claims, and negligent infliction of emotional distress. Now before this Court is the request of the defendants, Wesley Blanchard and Lincoln Chafee, for a pre-trial ruling that they are entitled to qualified immunity from suit for damages in their personal capacities with regard to the plaintiff's procedural and substantive due process claims.[1]

### I

### BACKGROUND

The sole witness in the evidentiary hearing held before this Court was defendant Blanchard, the former chief of the City of Warwick Police Department. Chief Blanchard testified that on June 2, 1994, he received information from the Rhode Island State Police that they wanted to speak with the plaintiff concerning a murder trial that was in progress in the State Superior Court. Although the record is not entirely clear, I conclude that the State Police advised Chief Blanchard that prior to the murder, the plaintiff, together with another officer, was in the company of Officer Sabetta, the defendant in the murder trial. The State Police further informed Chief Blanchard that the plaintiff was "perhaps ... withholding information which the Rhode Island State Police deemed important to the presentation of their case." Transcript, August 30, 1995 at 11. This accusation was premised on an anonymous letter that the State Police had received, stating that the plaintiff and other officers had knowledge of Sabetta's activities and, in concert, decided to keep secret what they knew.

At the request of the State Police, Chief Blanchard ordered the plaintiff to report to State Police Headquarters on the afternoon

---

1. At the qualified immunity hearing held before this Court on August 30, 1995, Mr. DeSisto, attorney for the defendants, clarified that the request for a ruling of qualified immunity was limited to the plaintiff's procedural and substantive due process claims. Transcript, August 30, 1995 at 51.

of June 3, 1994, for questioning. The plaintiff complied, and, while she was there, she also met with Chief Blanchard. During this meeting, he stressed the seriousness of the accusations being leveled against her and urged that she cooperate; in response, the plaintiff stated that she had revealed all she knew. Chief Blanchard was dissatisfied with the response and handed her a letter of suspension, effective immediately with pay and benefits. He testified that his opinion was that what the State Police had told him was true; therefore, he summarily suspended the plaintiff because it was a serious matter for a police officer to hinder an investigation, as such conduct not only was detrimental to the public's safety but also impacted badly on all of the state's police forces. Thus, he testified, in his opinion, an emergency suspension was mandated.

On June 9, 1994, approximately one week following her suspension, the plaintiff, through counsel, requested a hearing. Rhode Island has legislated an Officers' Bill of Rights which, in pertinent part, reads:

> Emergency suspension may be imposed by the chief or the highest ranking officer of the law enforcement agency when it appears that such action is in the best interest of the public. Any emergency suspension of any law enforcement officer shall consist of the law enforcement officer being relieved of duty, and he or she shall receive all ordinary pay and benefits as he or she would have if he or she were not suspended.
>
> Any law enforcement officer so suspended shall be entitled to a prompt hearing before a hearing committee upon his or her request. The time period for the hearing is not to exceed fourteen days. If after hearing, the hearing committee does suspend or dismiss the law enforcement officer, he or she shall not be entitled to his or her pay and benefits. However, if the law enforcement officer is reinstated by a subsequent hearing, he or she shall be entitled to be reimbursed for all salary and benefits that have not been paid.

R.I.Gen. Laws § 42–28.6–13(C).

A few days following the suspension, Chief Blanchard met with a representative of the State Attorney General and agreed to have the State Police conduct an investigation. Chief Blanchard then met with William Smith, the Warwick City Solicitor, who advised him that the hearing requirement of the Officers' Bill of Rights did not apply because formal charges had not been filed against the plaintiff. Chief Blanchard then continued the suspension without scheduling a hearing and merely assigned one of his officers to monitor the State Police investigation.

Chief Blanchard testified that, as time went on, he became concerned about having one of his officers on suspension without formal charges being lodged, albeit with pay and benefits. During the month of July, he repeatedly contacted the State Police, only to learn that the investigation "wasn't moving." Tr. at 34. He discussed this lack of activity with his staff and, after returning from vacation in August and finding that the stalemate continued, he decided to reinstate the plaintiff, "until something came out of this." Tr. at 34. On August 9, 1994, he reinstated the plaintiff to full active status. She never received a hearing, as she had requested.

Chief Blanchard further explained that his police department conducted no investigation because he had agreed to have the State Police assume that task. Some time after August 9, 1994, Chief Blanchard received a letter from the State Police informing him that no criminal charges would be brought against the plaintiff, although they did feel that her conduct was morally wrong.

On cross examination, plaintiff's counsel developed that some several years prior to the present controversy, a Warwick policeman was suspected of murder. During the pendency of that investigation, Chief Blanchard did not suspend the officer. The plaintiff argues that such disparity of treatment makes suspect the Chief's reasons for suspension of this plaintiff. In his testimony, Chief Blanchard explained that the two situations were entirely different. The officer in the first situation was being investigated some two and one-half years subsequent to the murder and after his own department had conducted an investigation which, I conclude, exonerated the officer.

Whatever merit the explanation may have, it is not of concern now in determining Chief Blanchard's entitlement to qualified immunity with regard to the plaintiff's procedural and substantive due process claims. If anything, it bears on the merits of the plaintiff's disparate treatment claim. "Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard." *Amsden v. Moran*, 904 F.2d 748, 751 (1st Cir. 1990) (citations omitted). "The 'applicable standard' is an objective one. Thus: 'Because qualified immunity does not address the substantive viability of a section 1983 claim, but rather the objective reasonableness of a defendant's actions, a plaintiff who is entitled to prevail on the merits is not necessarily entitled to prevail on the issue of qualified immunity.'" *Id.* (citations omitted).

## II

### PROCEDURAL DUE PROCESS

#### A. *Chief Blanchard*

 Qualified immunity shields government officials who are performing discretionary functions "from [personal] liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The focus of this standard is the "objective reasonableness of an official's conduct as measured by reference to clearly established law." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. In applying the standard, first I must "ascertain whether the plaintiff has alleged, with the requisite particularity, that [the defendants] violated some right emanating from federal law." *Buenrostro v. Collazo*, 973 F.2d 39, 42 (1st Cir.1992). The plaintiff has made sufficient allegations that defendant Blanchard denied her procedural due process of law by failing to provide a hearing within fourteen days after her suspension, as required by the Officers' Bill of Rights. Next, I must "ascertain whether the right at issue was 'clearly established' at the time of the infringement.

If it was, [this Court] can then presume that the defendant knew, or should have known, that his conduct was beyond the pale." *Id.* (citations omitted). The defendants assert that this presumption does not apply in the present case, even though Chief Blanchard was aware of the hearing requirement. Instead, they claim, Chief Blanchard is entitled to qualified immunity because the City Solicitor, William Smith, had advised him that the requirement did not apply where, as in this case, the Warwick Police Department had not filed formal charges against the officer.

In *Harlow*, the Supreme Court emphasized that "if the law [is] clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738. In *Melton v. Oklahoma City*, 879 F.2d 706 (10th Cir.1989), *cert. denied*, 502 U.S. 906, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991), the defendant police chief argued that, in denying the plaintiff his status as a retired police officer without providing due process of law, he had "relied in good faith on the advice of municipal counsel ... and, therefore, he should be absolved of any personal liability for the consequences of his actions." *Melton*, 879 F.2d at 731. The court rejected this argument, declaring:

> Adopting the police chief's proffered position would immunize officials from liability via the simple expedient of consulting counsel.... [W]here the law is clearly established, there is no justification for excusing individuals from liability. In sum, officials are presumed to know and abide by clearly established law. When their actions are otherwise, their claims of immunity will fail.

*Id.; Cf. Malley v. Briggs*, 475 U.S. 335, 345–46, 106 S.Ct. 1092, 1098–99, 89 L.Ed.2d 271 (1986) (finding, under *Harlow* standard, that police officer was not objectively reasonable in relying upon judicial authorization of arrest warrant, where officer should have known that application for warrant was lacking in probable cause). Similarly, in the present case, the defendants cannot hide behind their attorney's mischaracterization of the indisputably clear Officers' Bill of Rights.

No doubt exists that the requirement of a hearing, if requested, within fourteen days of suspension is "clearly established." The law cited *supra*, itself is unambiguous in its provisions for emergency suspension of police officers. Chief Blanchard himself testified that he was well aware of the Officers' Bill of Rights and its hearing requirement. Tr. at 29.

The statute is detailed and straightforward, and it makes absolutely no mention of any exception to the prompt hearing requirement. Its language contains no indication that a different standard applies if no charges are filed against the suspended officer. Indeed, it makes explicit that in the case of "[a]ny emergency suspension of *any* law enforcement officer ... [the officer] shall be entitled to a prompt hearing...." R.I.Gen.Laws § 42–28.6–13(C) (emphasis added). The language does not contain even a hint that pressing charges is a prerequisite to the applicability of the law. Therefore, I find that the law is "clearly established" and that an "objectively reasonable" police chief should have known of the law's requirements and that they applied to plaintiff in the present case.

Defendants cite several cases for the proposition that reliance on the advice of counsel entitles them to qualified immunity. However, in all of these cases, the courts explicitly pointed out that the law was not clear. *See, e.g., Tubbesing v. Arnold,* 742 F.2d 401 (8th Cir.1984); *Arnsberg v. United States,* 757 F.2d 971, 981–82 (9th Cir.), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986); *Lee v. Mihalich,* 847 F.2d 66, 69 (3rd Cir.1988); *Young v. Lynch,* 846 F.2d 960, 963 (4th Cir.1988). The cases therefore do not bear on the present situation, where the law is indeed clear.

■ Even where the law is "clearly established," qualified immunity may apply if the government official can prove "extraordinary circumstances" such that he or she "neither knew nor should have known of the relevant legal standard." *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738. The Supreme Court made clear, however, that this defense would still turn on objective factors. *Id.* A few courts have looked to reliance on advice of counsel

as a potential factor in a determination that such "extraordinary circumstances" exist. For instance, in *V–1 Oil Co. v. Wyoming,* 902 F.2d 1482 (10th Cir.), *cert. denied,* 498 U.S. 920, 111 S.Ct. 295, 112 L.Ed.2d 249 (1990), the court stated that, in certain situations, reliance on the advice of counsel rises to the level of "extraordinary circumstances." *V–1 Oil,* 902 F.2d at 1488 (citations omitted). However, it noted that this exception applies only "rarely," and that "[t]he circumstances must be such that the defendant was so 'prevented' from knowing that his actions were unconstitutional that 'he should not be imputed with knowledge of an admittedly clearly established right.'" *Id.* (citations omitted). As the First Circuit has stated, "Proof of 'extraordinary circumstances' must amount to a showing that despite the clearly established existence of the legal rights of the plaintiffs something extraordinary *prevented* the defendant from actually knowing it." *Fernandez v. Leonard,* 784 F.2d 1209, 1216 (1st Cir.1986) (emphasis added).

In the present case, defendant was not prevented from knowing that his failure to provide a hearing violated plaintiff's rights. Chief Blanchard was an experienced law enforcement officer who had gone through the Officers' Bill of Rights hearing process before. Tr., August 30, 1995 at 29. He knew that the Officers' Bill of Rights applied generally to officers put on emergency suspension. He admitted that, before speaking to counsel, he knew that plaintiff had requested a hearing and was "concerned" about the application of the Officers' Bill of Rights. Tr., August 30, 1995 at 28–9. I therefore believe that he must be held, under the objective standard, to the clear and unambiguous provisions of the Officers' Bill of Rights, as he knew or should have known that plaintiff Molloy was entitled to a procedural due process hearing within fourteen days after her suspension. An objectively reasonable police chief with Chief Blanchard's knowledge of the law and past experience should have known that failure to provide plaintiff with a hearing violated the law. As this Court stated in a similar situation in *Ginaitt v. Haronian,* 806 F.Supp. 311, 319 (D.R.I. 1992), "'Advice of counsel' would be reduced

to an empty shibboleth—a password to immunity—if used knowingly to disregard the law." Here, the advice of counsel cannot shield the defendant from liability where the law was so clear and where advice of counsel should not have prevented a reasonable police chief from knowing that it applied to plaintiff.

### B. *Mayor Lincoln Chafee*

 Qualified immunity for Mayor Chafee needs little comment. The record is starved of any evidence associating Mayor Chafee with the suspension at issue. I conclude that he was entirely ignorant of the incident and must be exonerated from any personal liability for damages.

## III

### SUBSTANTIVE DUE PROCESS

With regard to the plaintiff's substantive due process claims, defendants Blanchard and Chafee are both granted qualified immunity.

 Substantive due process focuses on the result of the governmental action, not its procedures. *Amsden,* 904 F.2d 748, 754 (1st Cir.1990). The First Circuit has stated that a violation of substantive due process occurs when state action is "egregiously unacceptable, outrageous or conscience-shocking." *Id.* I do not consider that an "objectively reasonable" police chief would consider Chief Blanchard's conduct to be egregious or conscience-shocking. He did indeed suspend the plaintiff in violation of the clear and unambiguous language in the Officers' Bill of Rights. However, he maintained her pay and benefits and reinstated her before the State Police completed their investigation. His conduct, given the advice he received from counsel, does not rise to the level of being egregious, outrageous or conscience-shocking way. The defendant's request for qualified immunity is therefore granted with regard to Chief Blanchard as well as Mayor Chafee.

## IV

### CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment on the Basis of Qualified Immunity is granted in part and denied in part. Qualified immunity is granted to Mayor Lincoln Chafee with respect to both the plaintiff's substantive and procedural due process claims. Qualified immunity is granted to Chief Wesley Blanchard with respect to the plaintiff's substantive due process claim but denied with respect to the plaintiff's procedural due process claim.

SO ORDERED: