Luis A. ACEVEDO–GARCIA, et al., Plaintiffs, Appellees,

v.

Roberto VERA–MONROIG, et al., Defendants, Appellants.

No. 99–1137.

United States Court of Appeals, First Circuit.

Heard Sept. 16, 1999.

Decided Feb. 17, 2000.

Orlando Fernández, with whom Juan Carlos Garay and Garcia & Fernández were on brief, for appellants Roberto Vera–Monroig and Irma González in their personal capacities.

Johanna M. Emmanuelli–Huertas, with whom Pedro E. Ortiz Alvarez was on brief, for appellants Municipality of Adjuntas and Roberto Vera–Monroig and Irma González in their official capacities.

Israel Roldán–González for appellees.

Before Selya, Circuit Judge, Coffin, Senior Circuit Judge, and Lipez, Circuit Judge.

LIPEZ, Circuit Judge.

This case requires us to consider claims of immunity from suit and liability raised by Roberto Vera–Monroig, the mayor of Adjuntas in Puerto Rico, Irma González, Adjuntas's Director of Human Resources, and the municipality of Adjuntas in response to a lawsuit filed by eighty-eight former and current employees of the municipality, all members of the New Progressive Party ("NPP"), in the wake of an election in November 1996. Alleging violations of their First, Fifth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, the plaintiffs fall into two groups: those who allege that they were discharged from their positions and replaced with workers from the mayor's political party; and those who allege that they suffered changed work conditions and responsibilities, including removal of job functions, relocation to distant or substandard office facilities, assignment of menial duties to supervisory staff, and restrictions on bathroom breaks. These actions occurred after the election of Mayor Vera of the Popular Democratic Party ("PDP") in November 1996 and almost exclusively affected employees affiliated with the NPP.

The individual defendants sought summary judgment from the district court on the basis of absolute immunity for their legislative activities and qualified immunity for the performance of discretionary government functions. The municipality sought summary judgment on the grounds that liability was unavailable under § 1983 because the plaintiffs had not established a policy of harassment and because the municipality followed the laws of Puerto Rico. The defendants also moved for summary judgment on more traditional grounds, arguing that the plaintiffs failed to provide sufficient evidence of discrimination based on political affiliation to warrant a jury trial. The district court rejected the absolute and qualified immunity defenses of the individual defendants and the grounds asserted by the municipality for summary

judgment, thereby prompting this appeal. *See Acevedo–Garcia v. Vera Monroig,* 30 F.Supp.2d 141 (D.P.R.1998).

We affirm the denial of summary judgment for two reasons: (1) the district court's ruling on the unavailability of absolute immunity for the non-legislative acts of the individual defendants was correct; and (2) we lack jurisdiction to consider the challenges to the district court's rulings on qualified immunity and municipal liability.

## I. BACKGROUND

### A. Factual Summary

Drawing upon the district court's opinion, we first set forth the uncontested facts. We then set forth the contested facts in the light most favorable to the plaintiffs, cognizant of the principle that we must take the record in the light most favorable to the party opposing summary judgment. *See Buenrostro v. Collazo,* 973 F.2d 39, 41 (1st Cir.1992).

### 1. Uncontested Facts

Mayor Vera of the PDP won the November 1996 elections in Adjuntas. *See Acevedo–Garcia,* 30 F.Supp.2d at 143–44. The previous mayor had been a member of the NPP, and during his tenure from 1989 to 1997 only two of the 114 employees he hired had been members of the PDP. According to an April 1996 audit report from the Puerto Rico Comptroller's Office, Adjuntas had operated with an annual deficit of at least $1,000,000 for over a decade. Mayor Vera requested a further financial study of municipal operations from a private certified public accountant. The financial report prepared by the accountant showed a cumulative deficit of over $5,000,000 as well as long-term debt of $2,000,000. Mayor Vera decided that the municipal departments were overstaffed and that the municipality could not maintain the same levels of employment. He hired a private human resources consulting firm to evaluate all personnel files and prepare a layoff plan. *See id.* at 144.

Pursuant to Puerto Rican law, P.R. Laws Ann. tit. 21, § 4551, the Mayor submitted the layoff plan (Ordinance No. 25) to the Adjuntas Municipal Assembly for approval; the Assembly approved it in April 1997. The layoff plan detailed procedures for the selection of employees for discharge and any ensuing appeals of the municipality's decisions. *See id.* After meeting with the municipal officials and the private consultants responsible for the financial study and layoff plan, Mayor Vera instructed his staff to implement the plan. Municipal staff evaluated personnel files to determine seniority, notified employees of their seniority status, and provided an opportunity for employees to contest their status. On September 11, 1997, letters of severance were sent to affected employees, informing them of their anticipated discharge and their right to appeal the decision to the Personnel Administration Systems Board of Appeals. Municipal officials posted employee seniority status and listed employees affected by the layoff plan. *See id.* Employees listed for termination received a second letter informing them again of their right to appeal. *See id.* at 145.

Pursuant to Puerto Rican law, the elimination of municipal positions occurs through a legislative act. On November 19, 1997, the municipality enacted Ordinance No. 20 which eliminated 102 positions. *See id.* at 144. Almost all of the employees discharged were members of the NPP. After the layoff, Mayor Vera hired 77 new contract employees for positions in state-funded programs.[1] *See id.* at 145. Most of the contract workers were affiliated with the PDP.

### 2. Contested Facts

While the plaintiffs concede that the defendants' actions were taken pursuant to the layoff plan, they claim that the defendants implemented the layoff plan in a discriminatory manner. The municipality did not always observe the plan's seniority criteria, sometimes retaining employees with less seniority than the plaintiffs who were fired. Moreover, the most senior terminated employees were not always offered open municipal positions for which they qualified, contrary to the provisions of the plan. Indeed, many whose positions were eliminated were replaced by less senior contract workers from the PDP who performed the same job functions but under different titles. Plaintiffs who retained their positions were treated differently than PDP workers while they remained on the job. They experienced a variety of indignities, such as deprivation of job functions, bathroom breaks, and office furniture. *See id.*

### B. The District Court's Decision

In a lengthy written opinion, the district court rejected all of the immunity and municipal liability defenses. The individual defendants were not entitled to immunity for legislative acts because the alleged political discrimination took place in the administration of the layoff plan and not in its legislative adoption. *See id.* at 148. The municipality could not prevail on summary judgment because its liability hinged on disputed material facts. *See id.* at 152.

In rejecting the qualified immunity defense of the individual defendants, the court first noted that the defendants would be shielded by qualified immunity if the jobs in question "potentially concerned matters of a partisan political interest and involved at least a modicum of policymaking responsibility, access to confidential information, or official communication." *Id.* at 149 (quoting *Figueroa–Rodriguez v. Lopez–Rivera*, 878 F.2d 1478, 1480 (1st Cir. 1989)). The defendants, however, did not invoke qualified immunity because of the nature of the plaintiffs' jobs. Instead, Mayor Vera and Director González argued that they were entitled to qualified immunity because they "acted in an objectively

---

1. The new employees were hired into contract rather than career municipal positions. They were paid with state funds rather than municipal funds.

reasonable manner and in conformance with relevant legal standards by proposing and implementing the Layoff Plan based on Puerto Rico Law 81."

The court found this argument legally insufficient: "Even if the Court 'objectively' considers the fact that Defendants allegedly followed Law 81 in the analysis of qualified immunity, Plaintiffs have proffered evidence of a triable issue of fact regarding a potentially discriminatory application of the Layoff Plan." *Id.* The court's finding of a triable issue of fact on political motivation applied both to the claims of plaintiffs who had lost their jobs and plaintiffs who claimed political harassment because of changes in their work conditions and responsibilities. In addition, by rejecting qualified immunity for the political harassment claims of plaintiffs who still had jobs, the court implicitly determined that the law protecting them from the politically-motivated changes in work conditions and responsibilities was "clearly established." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ("If the law was clearly established, the immunity defense ordinarily should fail . . . .").

After disposing of the qualified immunity issues, the court turned to the defendants' traditional summary judgment argument that the individual plaintiffs had not generated genuine issues of material fact on either their termination or political harassment claims. With respect to the allegations of unlawful termination, the trial court denied the defendants summary judgment as to the claims of seven of the plaintiffs.[2] For this group of claims, the court found that the defendants' replacement of NPP members with PDP members in the same job function but with a different title created a triable issue of fact as to whether the conduct had been motivated by political discrimination. *See id.* at 154. For the remaining plaintiffs alleging unlawful termination, the trial court requested that they submit additional evidence indicating the job duties of positions created after January 1, 1997, and the qualifications of the plaintiffs to fill those positions.[3] *See id.* at 155.

The trial court then evaluated which plaintiffs had offered sufficient evidence of political harassment to withstand summary judgment. The court found that thirty plaintiffs had put forward some affirmative evidence that they were harassed on the basis of political affiliation after the new administration took office. *See id.* at 156–57. The defendants countered with evidence that the alleged campaign of harassment represented "legitimate efforts to enable the Municipality to be more efficient." After considering this evidence, the court concluded that summary judgment should be granted for defendants as to the claims of two of the plaintiffs who "only allege claims relating to the use of the telephone, the timing of breakfast breaks, and the use of sign in sheets." *Id.* at 158. The court concluded that these policy changes were founded on legitimate municipal needs and that the changes would have been made regardless of political affiliation. These two claims were the only claims dismissed by the district court.

The court denied summary judgment to the defendants for the thirty remaining

---

2. These plaintiffs are Sonia E. Bermúdez–Sepúlveda, Helga E. Maldonado Rodríguez, Aurea Martínez Perez, Migdalia Pagán Reyes, Miguel Angel Rivera González, Maribel Rodríguez Vega, and Nora López Maldonado.

3. The pendency of the trial court's decision on the claims of those plaintiffs required to submit additional evidence is not a factor in our decision that we do not have jurisdiction to consider the appeal of the defendants from the qualified immunity ruling of the court.

The court required this additional evidence in order to evaluate the sufficiency of the evidence supporting the political discrimination claims of the plaintiffs. We have not been asked by the defendants to review any denial of summary judgment based on the sufficiency of the evidence supporting a particular plaintiff's claim. Instead, they ask us to review a qualified immunity ruling which applies to the claims of all the plaintiffs.

plaintiffs who had offered evidence of harassment.[4] These plaintiffs had provided evidence of "further harassment, including that their job functions were decreased or eliminated, that they were forced to do menial work not related to the job functions, that they were not allowed to go to the bathroom and/or that the bathroom was not always available, and that they were not allowed to take breakfast breaks." *Id.* The court found that these allegations were "sufficient to state a claim for political harassment under *Agosto–de–Feliciano* and *Rutan* "[5] because a finder of fact could reasonably conclude that their positions were made "unreasonably inferior to the norm" compared to similarly situated PDP employees.

The individual defendants and the municipality filed this appeal, seeking reversal of the district court's determinations on absolute immunity, qualified immunity, and municipal liability. Although defendants do not formally challenge the court's denial of summary judgment on the traditional evidentiary sufficiency grounds for the claims of thirty-one of the eighty-eight plaintiffs, they fail to appreciate the relevance of the court's "triable issue of fact" determinations to the availability of an appeal from the denial of a request for summary judgment on the basis of qualified immunity. Ordinarily, the denial of summary judgment is not appealable. *See Buenrostro v. Collazo*, 973 F.2d 39, 41 (1st Cir.1992). However, review is sometimes available for the denial of summary judgment on immunity grounds because the immunity encompasses immunity from both suit and liability. *See Mitchell v. Forsyth*, 472 U.S. 511, 525–27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Appeal of such decisions is limited to issues of law, such as whether an act was truly "legislative" or whether the constitutional rights at issue were "clearly established." *See Diaz v. Diaz Martinez*, 112 F.3d 1, 3 (1st Cir.1997) (citing *Johnson v. Jones*, 515 U.S. 304, 317, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)). Defendants may not file an immunity appeal simply on the ground that they did not do what the plaintiffs allege. *See id.* Such fact-based appeals inappropriately ask the appellate court to revisit the trial court's decision that "the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson*, 515 U.S. at 319–20, 115 S.Ct. 2151. We therefore turn to the defendants' various grounds for appeal, cognizant of these jurisdictional bars.

## II. ABSOLUTE IMMUNITY

Officials acting in a legislative capacity have absolute immunity from suit and liability under § 1983. *See Romero–Barcelo v. Hernandez–Agosto*, 75 F.3d 23, 28 (1st Cir.1996). The function of such immunity is "to insure that the legislative function may be performed independently without fear of outside interference." *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 731, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980); *see also Forrester v. White*, 484 U.S. 219, 223, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) ("When officials are threatened with personal liability for acts taken pursuant to their official duties, they may well be in-

---

4. Six of the plaintiffs presented sufficient evidence to withstand summary judgment on both their termination and harassment claims. These plaintiffs are Nora López Maldonado, Sonia E. Bermúdez–Sepúlveda, Aurea Martínez Rivera, Migdalia Pagán Reyes, Miguel Angel Rivera González, and Maribel Rodríguez Vega. The court denied summary judgment for the defendants as to the claims of twenty-four plaintiffs who alleged political harassment short of termination. The court also denied summary judgment for the defendants as to the claim of one plaintiff, Helga E.

Maldonado Rodríguez, based solely on the allegation of discriminatory discharge. Taken together, this summary accounts for the denial of summary judgment for the defendants on sufficiency of the evidence grounds with respect to the claims of thirty-one of the eighty-eight plaintiffs.

5. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Agosto–de–Feliciano v. Aponte–Roque*, 889 F.2d 1209 (1st Cir.1989).

duced to act with an excess of caution or otherwise to skew their decisions...."). Legislative immunity applies to local legislators as well as to their state and federal counterparts, *see Bogan v. Scott–Harris,* 523 U.S. 44, 118 S.Ct. 966, 970–72, 140 L.Ed.2d 79 (1998) (reasoning that the common law had afforded this protection and that the rationales for legislative immunity applied with equal force to local legislators), and it applies when these officials act "in a field where legislators traditionally have power to act." *Tenney v. Brandhove,* 341 U.S. 367, 379, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). The administrative or executive actions of legislators are not entitled to protection. *See Bogan,* 118 S.Ct. at 972. "[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester,* 484 U.S. at 227, 108 S.Ct. 538. An official's bad motivation, or "unworthy purpose," does not affect the immunity privilege so long as the actions fall within the ambit of protected legislative activity. *Tenney,* 341 U.S. at 377, 71 S.Ct. 783; *see also Rateree v. Rockett,* 852 F.2d 946, 951 (7th Cir.1988) (A "legislator may vote for legislation for seemingly improper reasons; nevertheless, the rule of absolute immunity shields this conduct.").

■■■ Defendants' claim to absolute immunity hinges on whether the actions at issue here were legislative or administrative. Absolute immunity applies to "prospective, legislative-type rules" that are general in nature. *Alexander v. Holden,* 66 F.3d 62, 67 (4th Cir.1995). "Employment decisions generally are administrative" except when they are "accomplished through traditional legislative functions" such as policymaking and budgetary restructuring that "strike at the heart of the legislative process." *Rateree,* 852 F.2d at

950–51. Voting for legislation, the introduction of budget plans, and signing an ordinance into law are "quintessentially legislative" functions. *Bogan,* 118 S.Ct. at 973.

■■■ The defendants characterize their behavior, including the selective layoffs and restrictions on employees, as "integral steps in the legislative process" rather than "acts of implementation," and they rely on the holding in *Bogan* in support of this claim. *See* 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79. We are not persuaded. In *Bogan,* the plaintiff alleged that her discharge, accomplished through an ordinance eliminating the city's Department of Health and Human Services (of which she was the sole employee), was motivated by racial animus and retaliation for filing a complaint against another employee who had made racial and ethnic slurs. The Supreme Court concluded that absolute immunity applied because the ordinance "bore all the hallmarks of traditional legislation." *Id.* 118 S.Ct. at 973. The ordinance "reflected a discretionary, policymaking decision" and it had prospective impact because it eliminated a department rather than a particular employee. *Id.* The entirety of the disputed action was accomplished legislatively. In the instant case, while the ordinances adopted by Adjuntas reflected discretionary, policymaking decisions, the defendants' alleged replacement of discharged NPP members with PDP contract workers and acts of political harassment did not. Similarly, the alleged acts of political discrimination were not "prospective"—that is, these acts did not "reach well beyond the particular occupant of the office," but instead targeted specific individuals affiliated with the NPP.[6] *Id.*

---

6. In *Bogan,* the Supreme Court explicitly rejected our consideration of subjective intent in determining that the challenged actions were not legislative. We had relied on the jury finding that the respondent's constitutionally protected speech was a motivating factor in the petitioners' conduct to find that

the petitioners' actions targeted a specific individual and thus were not legislative. The Supreme Court reversed, holding that, "[W]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." 118 S.Ct. at 972.

We draw support for these conclusions from a two-part analysis that we have adopted to determine whether an act is legislative or administrative. *See Cutting v. Muzzey,* 724 F.2d 259, 261 (1st Cir.1984). First, if the facts underlying the decision are "generalizations concerning a policy or state of affairs," the decision is legislative. *Id.* If the decision stems from specific facts relating to particular individuals or situations, the act is administrative. *Id.* Second, the court must consider the "particularity of the impact of the state of action." *Id.* "If the action involves establishment of a general policy, it is legislative;" if it "single[s] out specifiable individuals and affect[s] them differently from others," it is administrative. *Id.* In *Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27–28 (1st Cir.1994), a case conceptually similar to the instant suit, we applied this two-part test. There, the director of the legislative service office for the Commonwealth of Puerto Rico discharged the legislative librarian, a PDP member, and replaced her with an NPP activist. We concluded that under either test the "decision to replace Negron—a member of the Popular Democratic Party—with a New Progressive Party activist was administrative." *Id.* at 28.

Vera and González rely on the two ordinances relating to the layoff plan to support their claim that their actions were legislative in nature. The Adjuntas Municipal Assembly formally enacted the mayor's layoff plan through Ordinance 25. A subsequent piece of legislation, Ordinance 20, ordered the elimination of 102 specified positions in order to "enable[ ] the Municipality Administration to readjust the 1997–98 Operating Budget to the Municipality's economic reality."

Although these two ordinances provided a framework for the administrative decisions of Vera and González in implementing the layoff plan, it is precisely those administrative decisions that are at issue in this case. After the enactment of Ordinance 20, the defendants' implementation of the layoff plan targeted specific individuals. Following the terminations, the defendants hired contract employees for the same job function but under a different formal title. The replacement of NPP workers with less senior PDP contract workers performing essentially the same functions constituted particularized employment decisions rather than general policymaking. The defendants also targeted specific individuals in the NPP and "affected them differently from others" through restrictions on job amenities, such as bathroom access and office furniture, and reduction of job duties. According to the allegations, the political harassment began prior to the enactment of Ordinance 25 and persisted for the remaining NPP workers after the layoff of their co-workers pursuant to Ordinance 20. Because the defendants' decisions stemmed from specific facts about the party affiliation of individuals and affected particular individuals differently from others, these actions were administrative rather than legislative. Legislative ratification does not shield the defendants from liability.

Similarly, the defendants' contention that they are entitled to legislative immunity because their actions in discharging the plaintiffs were taken pursuant to Puerto Rican law is unconvincing. In *Forrester,* 484 U.S. at 230, 108 S.Ct. 538, the Supreme Court declined to extend absolute immunity to a judge sued under § 1983 for violating the Equal Protection Clause when he allegedly discharged a probation officer based on her gender. The Court deemed it insignificant that Illinois law allowed judges to hire or fire probation officers: "To conclude that, because a judge acts within the scope of his authority, such employment decisions are brought within the court's 'jurisdiction,' or converted into 'judicial acts,' would lift form above substance." *Id.* The same analysis applies here—the mandates of Puerto Rican law on layoff procedures do not convert the defendants' conduct into legislative acts.

## III. QUALIFIED IMMUNITY

Vera and González argue that even if they are not entitled to legislative immunity, they are shielded from suit and liability by the doctrine of qualified immunity. We have no jurisdiction to review this claim on appeal.

■■■■ The doctrine of qualified immunity protects government officials who perform discretionary functions from suit and liability for monetary damages under § 1983. *See Roldan–Plumey v. Cerezo–Suarez*, 115 F.3d 58, 65 (1st Cir.1997). They are immune when their conduct does not violate "clearly established statutory authority or constitutional rights." *Mitchell v. Forsyth*, 472 U.S. 511, 524, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■■■■ Generally, as already noted, the denial of summary judgment is not appealable until after a final judgment. *See Buenrostro*, 973 F.2d at 41; *see also* 28 U.S.C. § 1291 ("[t]he courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts...."). Nevertheless, an appeal from the pre-trial denial of qualified immunity is available when the appeal is "based on a purely legal ground," but not when it challenges sufficiency of the evidence. *Diaz v. Diaz Martinez*, 112 F.3d 1, 3 (1st Cir.1997). In *Stella v. Kelley*, we explained the distinction between appealable and non-appealable immunity cases:

> [A] summary judgment order which determines that the pretrial record sets forth a genuine issue of fact, as distinguished from an order that determines whether certain given facts demonstrate, under clearly established law, a violation

of some federally protected right, is not reviewable on demand.

63 F.3d at 74. If the issue on appeal is "nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly 'separable' from the plaintiff's claim, and hence there is no 'final decision.'" *Behrens v. Pelletier*, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *see also Mitchell*, 472 U.S. at 530, 105 S.Ct. 2806. Therefore, to decide the availability of an appeal from the qualified immunity ruling of the district court, we must determine whether the trial court denied qualified immunity on the basis of an abstract issue of law or on the existence of what it perceived as genuine issues of material fact concerning the actions of Vera and González.

### A. Politically–Motivated Terminations

The district court identified seven plaintiffs who had established a triable issue of fact as to whether they had been fired because of their political affiliation and then replaced by contract workers or less senior employees. These employees presented evidence that, although their positions were eliminated under the layoff plan, they were effectively replaced with newly hired PDP members who performed the same job functions (though typically under a different title). The court also requested additional evidence from other plaintiffs so that it could determine whether they had established a triable issue of fact on political motivation. In making these rulings, the court concluded that the law on politically-motivated terminations was clearly established.

■■■■ Vera and González concede that the law on politically-motivated terminations is clearly established. They argue, however, that they are guilty of nothing more than "develop[ing] a layoff plan and evaluat[ing] the positions to be. eliminated according to the objective criteria of seniority." In their brief, defendants list twenty-one "uncontested facts [regarding

the layoff process and procedures] that directly demonstrate that Mayor Vera and Ms. González acted reasonably." They conclude that they acted with "objective reasonableness," and they assert that "[t]he district court erred, therefore, in looking at defendants' allegedly politically discriminatory motive.... [R]easonability from an objective point of view is the norm to apply in this case."

Defendants misunderstand the nature of the claim that they face in this case. For a subset of constitutional torts, motivation or intent is an element of the cause of action. In *Tang v. State of Rhode Island, Department of Elderly Affairs*, 120 F.3d 325, 325 (1st Cir.1997), the plaintiff alleged that she had suffered racial discrimination and retaliation in her position as nutritionist for the state government. The district court found the majority of facts in dispute and deferred hearing the defendants' motion for qualified immunity until completion of the trial. *Id.* at 326. The defendants appealed. In concluding that we lacked jurisdiction because the appeal was based on a dispute over motive and other factual matters, we responded to the defendants' contention that subjective intent is irrelevant to qualified immunity: "[T]he *Harlow–Anderson* objective test does not automatically resolve a qualified immunity defense in favor of the defendant in a case of alleged racial discrimination or retaliation .... a wholly objective test would wipe out many, if not most, of these claims." *Id.* at 327.

The reasoning in *Tang* applies to the claims of Vera and González that the district court erred in considering evidence of their motivation. The plaintiffs allege that they were terminated because of their political affiliation, a constitutional claim that has no meaning absent the allegation of impermissible motivation. The district court recognized this fact, concluding that the "Defendants' emphasis on the fact that their conduct was 'objectively reasonable' because they acted pursuant to Puerto Rico Law 81 in the Layoff Plan ... is not

sufficient to meet their burden under the relevant legal standard and to grant them qualified immunity." *Acevedo–Garcia,* 30 F.Supp.2d at 149. That was so, the court continued, because "Plaintiffs have proffered evidence of a triable issue of fact regarding a potentially discriminatory application of the Layoff Plan." *Id.* There was no error in this analysis.

Interestingly, we suggested in a footnote in *Tang* that the Supreme Court might clarify the relevance of motivation in considering a qualified immunity defense to a charge of retaliatory motive when it heard *Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), a case then scheduled for argument, in which the defendant correction officer was charged with diverting the property of the plaintiff prisoner with an intent to retaliate against him for exercising his First Amendment rights. *See id.* 118 S.Ct. at 1587. As noted by Chief Justice Rehnquist in his dissent in *Crawford–El,* that clarification did not occur. Instead, the Supreme Court confined its ruling to a disapproval of the requirement of the Court of Appeals, District of Columbia Circuit, that in claims of a constitutional tort requiring proof of the actor's unconstitutional motive, the plaintiff must present clear and convincing evidence of that motive. The Court did not address the second question presented in the petition on which the Court granted certiorari:

> In a First Amendment retaliation case against a government official, is the official entitled to qualified immunity if she asserts a legitimate justification for her allegedly retaliatory act and that justification would have been a reasonable basis for the act, even if evidence—no matter how strong—shows the official's actual reason for the act was unconstitutional?

Given the lack of an answer to this question, Chief Justice Rehnquist concluded that "[u]nder the Court's view, only a factfinder's ultimate determination of the mo-

tive with which he acted will resolve this case." *Id.* at 1602.

■ Chief Justice Rehnquist's assessment of the law after *Crawford–El* confirms the rightness of the district court's consideration of motivation in rejecting the qualified immunity defense of the defendants. Because we reject the defendants' legal argument that the district court erred in considering motivation, we are left with a denial of summary judgment based on their motivation. In *Stella v. Kelley,* we held that we "lack the power to inquire into ... the fact-based question of what the evidence does (or does not) show concerning whether the selectmen's actions violated the asserted right—a question that depends, in this case, on the selectmen's motives." 63 F.3d 71, 75 (1st Cir. 1995). The evidence relating to the defendants' motivation in terminating plaintiffs is a factual matter and thus cannot form the basis of an appeal from the denial of summary judgment. *See Guilloty–Perez v. Fuentes–Agostini,* 196 F.3d 293, 294 (1st Cir.1999).

## B. Politically–Motivated Changes in Work Conditions and Responsibilities

A second group of plaintiffs complain of loss of job function, relocation to remote or inferior offices, and restricted access to bathroom breaks and facilities. These plaintiffs claim that the miserable working conditions created by their supervisors amounted to a constitutional violation.

In denying summary judgment for the defendants on their political harassment claims, the district court discussed the relevant law on political discrimination based on changes in work conditions and responsibilities. Specifically, it noted that we have left unresolved the relationship between our holding in *Agosto–de–Feliciano v. Aponte–Roque,* 889 F.2d 1209, 1218 (1st Cir.1989), that politically-motivated changes in work conditions and responsibilities which make a plaintiff's situation "unreasonably inferior to the norm for the

position" violate constitutional rights, and the Supreme Court's later decision in *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), that "promotions, transfers, and recalls after layoffs based on political affiliation" are examples of impermissible "deprivations less harsh than dismissal that nevertheless press state employees and applicants to conform their beliefs and associations to some state-selected orthodoxy." *Acevedo–Garcia,* 30 F.Supp.2d at 156. Although the *Rutan* Court did not explicitly address the issue of changed work conditions and responsibilities as examples of deprivations less harsh than dismissal, it noted in dicta that, "the First Amendment ... already protects state employees not only from patronage dismissals but also from 'even an act of retaliation as trivial as failing to hold a birthday party for a public employee ... when intended to punish her for exercising her free speech rights.'" *Id.* at 76 n. 8, 110 S.Ct. 2729 (citations omitted). It is not clear if this language in *Rutan* proscribes application of the "unreasonably inferior to the norm" standard of *Agosto–de–Feliciano* to politically-motivated changes in work conditions and responsibilities, or whether that doctrine survives *Rutan,* "providing a sort of ... intermediate First Amendment haven for employees wounded by slings and arrows less damaging than those [official actions] described by the *Rutan* court." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 705 (1st Cir.1993). In *Acosta–Orozco v. Rodriguez–De–Rivera,* 132 F.3d 97, 101 n. 5 (1st Cir.1997), we noted the possible conflict between these two cases and stated that "we leave the resolution of any conflict in the standard for such adverse personnel actions to some future case."

Despite noting that "it is unclear how the First Circuit views the *Rutan* dicta as affecting its 'unreasonably inferior'" standard, the district court rejected the qualified immunity defense of the defendants to the political harassment claims of the

plaintiffs, concluding that "a finder of fact could determine that the plaintiffs here put forth clear and convincing evidence [as required by *Agosto–de–Feliciano* ], that their positions are 'unreasonably inferior to the norm.'" *Acevedo–Garcia*, 30 F.Supp.2d at 156–58. By applying the *Agosto–de–Feliciano* standard, the court implicitly concluded that the right of the plaintiffs to be protected from politically-motivated changes in work conditions and responsibilities was established clearly enough to reject the qualified immunity defense of the defendants.

 Arguably, the defendants could have appealed from this implicit legal conclusion of the district court relating to the clarity of the right protecting the plaintiffs from politically-motivated changes in work conditions and responsibilities. In *Behrens v. Pelletier*, the Supreme Court held that "summary judgment determinations are appealable when they resolve a dispute concerning an 'abstract issu[e] of law' relating to qualified immunity—typically, the issue whether the federal right allegedly infringed was 'clearly established.'" 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)(internal citations omitted). The defendants failed to frame such an issue.[7] Instead, they persisted in their argument that their conduct, viewed objectively, was reasonable and that any consideration by the district court of evidence of a proscribed political motive was inappropriate. For the reasons already stated, that argument is wrong. The district court's denial of summary judgment for the defendants on their immunity defense to the political harassment claims of the plaintiffs rests, in part, on what the district court reasonably perceived to be triable issues of fact about the defendants' political motivation. We have no jurisdiction to consider such rulings on appeal.

7. The defendants could have also framed the legal issue somewhat differently. Concluding that a legal right is established is one legal conclusion. Accepting as true for the purposes of summary judgment the alleged conduct of the defendants and concluding that

## IV. MUNICIPAL LIABILITY

 In addition to suing Vera and González in their personal capacities, the plaintiffs sued the municipality of Adjuntas. The Supreme Court decision in *Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) authorizes § 1983 relief against municipalities where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." In moving for summary judgment, the defendant alleged that the plaintiffs had not offered sufficient evidence that the alleged constitutional violations were municipal policy. The district court denied summary judgment, finding that the "evidence [was] sufficient to show that the alleged harassing conduct is so 'well settled and widespread' as to attribute the custom or policy of harassment to the Municipality," and that the comments of municipal supervisors that the harassment was targeted at NPP employees provides the necessary "'affirmative link' between the harassing conduct and the policy of political discrimination." *Acevedo–Garcia*, 30 F.Supp.2d at 152.

 We will not evaluate this denial of summary judgment because we do not have jurisdiction to do so. In *Swint v. Chambers County Commission*, 514 U.S. 35, 43, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), a unanimous Supreme Court held that the denial of summary judgment based on municipal liability is not immediately appealable. The rationale supporting immediate review of some qualified immunity decisions does not extend to a municipality's defenses to § 1983 claims. In qualified immunity, "[t]he entitlement is

their conduct violated the clearly established rights of the plaintiffs is another legal conclusion. *See Stella v. Kelley*, 63 F.3d 71, 74 (1st Cir.1995). Here, the court apparently drew both legal conclusions with respect to the political harassment claims of the plaintiffs.

an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806. Thus, pre-trial qualified immunity decisions are immediately appealable as collateral orders when the immunity claim presents a legal issue that can be decided without considering the correctness of the plaintiff's version of the facts. *See Johnson*, 515 U.S. at 313–15, 115 S.Ct. 2151. The *Swint* Court ruled that, unlike the qualified immunity entitlement, municipal defenses under § 1983 are not a right to immunity from trial but a "mere defense to liability." *Swint*, 514 U.S. at 43, 115 S.Ct. 1203. As such, the collateral order doctrine does not apply and a municipality's defenses to suit may only be reviewed after a final judgment on the merits. *Id.*

## V. CONCLUSION

For all of the reasons set forth above, we *dismiss* the appeal in part for want of appellate jurisdiction and, as to the remainder, *affirm* the district court's denial of summary judgment.