Basilio TORRES–RIVERA,
et al., Plaintiff(s)

v.

Hon. Sila Maria CALDERON–SERRA,
et al., Defendant(s).

Civil No. 03–1373 JAG.

United States District Court,
D. Puerto Rico.

Aug. 5, 2004.

Antonio Borres–Otero, Fernando L. Gallardo, Woods and Woods, San Juan, PR, for Plaintiffs.

Luis Sanchez–Betances, Sanchez, Betances & Sifre, P.S.C., San Juan, PR, Eduardo A. Vera–Ramirez, Landron & Vera, LLP, Guaynabo, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On April 7, 2003, plaintiff Basilio Torres–Rivera ("Torres") and other former Commissioners and employees of the Industrial Commission (collectively "plaintiffs"),[1] filed suit against defendants Sila Maria Calderon–Serra ("Governor Calderon"), in her individual and official capacity as governor of the Commonwealth of Puerto Rico; Cesar R. Miranda–Rodriguez ("Miranda"), in his individual and official capacity as Governor Calderon's Chief of Staff, his wife and the conjugal partnership constituted between them; and Gilberto M. Charriez–Rosario ("Charriez")(collectively "defendants"), in his individual and official capacity as Chairman of the Industrial Commission, his wife and the conjugal partnership constituted between them; alleging political discrimination pursuant to 42 U.S.C. § 1983 and seeking judgment declaring the unconstitutionality of Law 94 of March 25, 2003 [2] (Docket Nos. 1, 16). On June 10, 2003, defendants moved for dismissal of plaintiffs' claims for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 19). On July 28, 2003, plaintiffs filed

an opposition (Docket No. 23).[3] For the reasons discussed below, the Court **GRANTS** the motion to dismiss.

## FACTUAL BACKGROUND[4]

On July 1, 1996, then Governor Pedro Rossello enacted Law 63, codified as 11 P.R. Laws Ann. § 8. Law 63 sought to restructure the Industrial Commission, the commission charged with hearing appeals under the Workmen's Compensation Act, Law No. 45 of April 18, 1935. Law 63 increased the number of Commissioners from five (5) to twenty-five (25), and gave them a definite term in office. Each Commissioner would be appointed by the Governor with the advice and consent of the Senate. Each Commissioner was given the authority to make a final adjudication of the claims before them independently. Prior to Law 63, hearing examiners would make recommendations to the five Commissioners, who would make a final adjudication of the claims by a majority vote. Furthermore, Law 63 stated that those Commissioners appointed prior to its effective date would remain in office until their original terms expired.

On March 25, 2003, Governor Calderon enacted Law 94, which, citing problems of inefficiency with its then current functioning and the number of complaints filed with the Office of the Ombudsman, restructured once again the Industrial Commission. It returned the number of Commissioners to five (5), to be appointed by the Governor with the advice and consent

1. There are a total of 32 main plaintiffs, plus their respective spouses and conjugal partnerships, in addition to Torres. Because their individual claims are indistinguishable from each other, except as to the extent of damages sought, the Court finds it unnecessary to name them all here.

2. The statute amends and replaces 11 P.R. Laws Ann. § 8, but has not been codified as such to this date.

3. The case was originally assigned to Chief Judge Jose A. Fuste and was transferred to the undersigned's docket on March 5, 2004 (Docket No. 31).

4. The relevant facts are taken from the First Amended Complaint (Docket No. 16).

of the Senate to a fixed term. Law 94, however, remained silent on the fate to befall those Commissioners appointed prior to its enactment; it does not explicitly terminate their positions nor does it state that they may remain as Commissioners until the expiration of their original terms. Furthermore, the statute created twenty-five (25) career positions of hearing examiner which would be designated by the Chairman. The duties of the hearing examiners are very similar to those of the Commissioners under Law 63, except that they make a recommendation to the Commissioners rather that make a final determination on their own.

During the legislative debates over Law 94, members of the minority parties NPP and PIP proposed amendments that would insure the Commissioners would be able to finish their terms, but the PDP majority rejected them. Furthermore, both the Secretary of Justice and the Office of Management and Budget advised the legislature and the Governor that problems could arise if language to safeguard the Commissioner's positions was not included in the statute because the Industrial Commission is a quasi-judicial body that requires absolute independence from executive interference.

On April 11, 2003, the Senate approved Charriez's nomination and he took the oath of office as Chairman of the Industrial Commission. Three other "new" Commissioners also took their oaths that day. Also on that date, Charriez sent written notices to all Commissioners informing them that he was the new Chairman of the Industrial Commission. He also sent a letter to Torres requesting that he immediately hand over all the Commission's property in his possession, including the keys to the Chairman's office and to the official automobile. Torres responded by stating that he was the legal Chairman of the Commission, a quasi-judicial body, with tenure until June 30, 2006, that he had not been terminated from his position by the Governor for good cause, and that he would not comply with Charriez's requests. Charriez then went to the Puerto Rico Department of Justice ("PRDJ") and obtained a warrant for Torres' arrest.

On April 14, 2003, the PRDJ indicted Torres with a misdemeanor charge of allegedly usurping the position of Chairman and a felony charge of illegally retaining governmental property and documents pursuant to the Puerto Rico Penal Code. A Judge of the Investigations Part of the San Juan Judicial Center found probable cause for arrest in the misdemeanor charge, but dropped the felony charge. Upon the PRDJ's request, the Judge, instead of ordering Torres to post bail, ordered that Charriez not be interfered with in occupying the position of Chairman.

Also in that same afternoon, Interim Governor Ferdinand Mercado ("Mercado")[5] sent letters to all plaintiffs terminating their positions at the Industrial Commission effective immediately. On April 15, plaintiffs went to their offices at the Industrial Commission to retrieve their personal belongings.

## DISCUSSION

### A. Motion to Dismiss Standard.

Pursuant to Fed.R.Civ.P. Rule 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Brown v. Hot, Sexy, and Safer Prods., Inc., 68 F.3d 525, 530 (1st Cir.1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. See Correa–Martinez v. Arrillaga–Belendez, 903 F.2d

5. Mercado is not a party to this case.

49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.,* 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (*citing Correa–Martinez,* 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

## B. *Defendants' Motion to Dismiss*

In their motion, defendants argue everything except the proverbial kitchen sink. Because the Court finds that the defendants are entitled to legislative and qualified immunity and that Law 94 is not unconstitutionally vague, discussion of all other arguments becomes unnecessary.

### 1. *Legislative Immunity*

"[S]tate and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." *Bogan v. Scott–Harris,* 523 U.S. 44, 49, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). "The function of such immunity is 'to insure that the legislative function may be performed independently without fear of outside interference.'" *Acevedo–Garcia v. Vera–Monroig,* 204 F.3d 1, 7 (1st Cir.2000)(*quoting Supreme Court of Virginia v. Consumers Union of the United States,* 446 U.S. 719, 731, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980)). "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative ac-

tivity.'" *Bogan,* 523 U.S. at 54, 118 S.Ct. 966 (*quoting Tenney v. Brandhove,* 341 U.S. 367, 376, 71 S.Ct. 783, 95 L.Ed. 1019 (1951)). "[I]mmunity is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).

> Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it. The privilege of absolute immunity "would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives."

*Bogan,* 523 U.S. at 54, 118 S.Ct. 966 (*quoting Tenney,* 341 U.S. at 377, 71 S.Ct. 783). "An official's bad motivation, or 'unworthy purpose,' does not affect the immunity privilege so long as the actions fall within the ambit of protected legislative activity." *Acevedo–Garcia,* 204 F.3d at 8 (*citing Tenney,* 341 U.S. at 377, 71 S.Ct. 783); *see also Rateree v. Rockett,* 852 F.2d 946, 951 (7th Cir.1988)(A "legislator may vote for legislation for seemingly improper reasons; nevertheless, the rule of absolute immunity shields this conduct.")

"The administrative or executive actions of legislators are not entitled to protection." *Acevedo–Garcia,* 204 F.3d at 8. The First Circuit has devised a two-part analysis to determine whether an act is legislative or administrative:

> First, if the facts underlying the decision are "generalizations concerning a policy or state of affairs," the decision is legislative. If the decision stems from specific facts relating to particular individuals or situations, the act is administrative. Second, the court must consider the "particularity of the impact of the

state of action." "If the action involves establishment of a general policy, it is legislative;" if it "single[s] out specifiable individuals and affect[s] them differently from others," it is administrative.

*Id.* at 9 (*citing Cutting v. Muzzey,* 724 F.2d 259, 261 (1st Cir.1984))(internal citations omitted).

■ "[O]fficials outside the legislative branch are entitled to legislative immunity when they perform legislative functions." *Bogan,* 523 U.S. at 55, 118 S.Ct. 966. Although the Governor is an officer of the executive, the act of signing legislation into law is a legislative act inasmuch as it is an integral part of the legislative process. *See Id.; see also Consumers Union of United States,* 446 U.S. at 731–734, 100 S.Ct. 1967; *Edwards v. United States,* 286 U.S. 482, 490, 52 S.Ct. 627, 76 L.Ed. 1239 (1932)(noting "the legislative character of the President's function in approving or disapproving bills"); *Smiley v. Holm,* 285 U.S. 355, 372–373, 52 S.Ct. 397, 76 L.Ed. 795 (1932)(recognizing that a Governor's signing or vetoing of a bill constitutes part of the legislative process). Thus, under certain conditions, legislative immunity can be extended to executive officers.

In this case, the only allegation that implicates any direct action by Governor Calderon is her signing into law the legislation known as Law 94 on March 25, 2003. Because this act is an integral part of the legislative process, *Bogan,* 523 U.S. at 55, 118 S.Ct. 966, Governor Calderon will be entitled to legislative immunity if the other requirements set forth above are met.

■ At the outset, the Court must turn a deaf ear to plaintiffs' allegations that the Governor intended to discriminate against them when she enacted Law 94. The above cited precedent clearly establishes that the Court is precluded from gauging a legislative officer's intent when proposing, voting for or against, or signing legislation into law. Thus, the only question for the Court to answer is whether her enactment of Law 94 falls under the category of a legislative act or an administrative act.

■ The first part of the inquiry turns on whether the legislature's action was prompted by "generalizations concerning a policy or state of affairs" or "from specific facts relating to particular individuals or situations." *See Acevedo–Garcia,* 204 F.3d at 9. Law 94's statement of motives declares that the legislature acted from a concern over the inefficiency of the system put in place by Law 63. Namely, that the number of cases being resolved did not meet to expectations, that problems had arisen because public policy was not being applied in a uniform manner, and that a record number of complaints had been filed with the Office of the Ombudsman due to unjustified delays in the adjudication of controversies. Citing these concerns, the legislature exercised its constitutionally mandated power to restructure any government agency not fulfilling the public policy for which it was created. *See* Law 94, Statement of Motives.

The legislature's impetus for Law 94 seems to be a general concern about the functioning as a whole of the Industrial Commission. There is no indication that any of the Commissioners were singled out, nor that specific situations with specific Commissioners prompted the reform. Thus, under the first prong of the test, Law 94 can be classified as a legislative act.

■ The second part of the inquiry turns on whether "the action involves establishment of a general policy" or if it "single[s] out specifiable individuals and affect[s] them differently from others." *See Acevedo–Garcia,* 204 F.3d at 9. As stated above, Law 94 cites concerns with the overall functioning of the Industrial Commission rather than complaints about

just a few or of specific Commissioners. The changes brought by Law 94 were meant to affect *all* Commissioners equally and does not seem to favor any of them over others.[6] Thus, Law 94 establishes a general policy and can be classified as a legislative act under the second part of the inquiry.

Therefore, Law 94 being classified as legislative act by its nature, Calderon's signing it into law is protected by absolute legislative immunity and all claims against her stemming from this act must be dismissed.

### 2. *Qualified Immunity*

■ "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." · *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The First Circuit employs a three-part test when determining if a public official is entitled to qualified immunity: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." *Mihos v. Swift,* 358 F.3d 91, 102 (1st Cir.2004)(*citing Suboh v. District Attorney's Office of Suffolk Dist.,* 298 F.3d 81, 90 (1st Cir.2002); *Harlow,* 457 U.S. at 818–819, 102 S.Ct. 2727).

■ This controversy arose because of Law 94's silence on whether those Commissioners who had taken office before its enactment would continue in their posi-

tions until their terms expired or if their appointments had been terminated. Plaintiffs argue that because the statute did not explicitly terminate their appointments, they were entitled to serve out the remainder of their terms. Defendants argue, however, that because the statute did not expressly provide for the plaintiff Commissioners to serve the remainder of their terms, the statute effectively terminated their appointments. As can be seen from these arguments, the effect of Law 94 upon the Commissioners and their appointments is at best unclear and still wide open for debate.

Furthermore, "the Puerto Rico Supreme Court has not yet spoken on the scope of the Governor's power of removal under the Constitution." *Santana v. Calderon,* 342 F.3d 18, 26 (1st Cir.2003). The outcome of this case turns upon the question of whether the Governor had the authority to terminate the plaintiffs from their positions before the expiration of their terms. In *Santana,* this question was examined under circumstances where the statute creating the position was still in effect when the challenged termination occurred. The result was that the uncertainty created by the Puerto Rico Supreme Court's silence entitles the defendants to qualified immunity.

Here, Law 63 had been passed before plaintiffs' termination and it completely restructured the make-up of the Commission. Although the legislators were urged to include safeguards to maintain plaintiffs in their positions, they did not choose to include such language within Law 94. The uncertainty as to the Governor's power of removal after such a change in the law is even greater than that in *Santana.* Thus,

---

**6.** That two of those Commissioners were selected by Governor Calderon to serve as Commissioners in the restructured Industrial Commission is irrelevant in this inquiry as the statute itself did not make a distinction between the twenty five Commissioners of Law 63.

it would be reasonable for the Governor to believe that the legislators meant to terminate plaintiffs from their positions and have them replaced and that she had the constitutional authority to do so. Even if the Puerto Rico Supreme Court were to hold otherwise, the important factor here is that at the moment that plaintiffs were terminated, the law was unclear.

Therefore, the Court has room for only one conclusion: that plaintiffs have failed to establish the second prong of the qualified immunity test, that the right was clearly established at the time of the alleged violation. Therefore, any actions by Governor Calderon, Miranda, or Charriez, insofar as they were carried out in accordance with or for the implementation of Law 94, are covered by the doctrine of qualified immunity and all claims against them in their individual capacities must be dismissed.

### 3. *Law 94's Constitutionality*

■ Lastly, plaintiffs seek from this Court a declaratory judgment that Law 94 is unconstitutional under the void for vagueness doctrine. The basis for the argument is that, because Law 94 remains silent on the fate of the Commissioners, a person of common intelligence does have sufficient notice of which conduct is proscribed. The first flaw in this argument, however, is that Law 94 does not seek to prohibit any sort of conduct.

Furthermore, attacks under this doctrine are usually confined to criminal statutes or civil statutes imposing some sort of civil penalty. *See, e.g., City of Chicago v. Morales*, 527 U.S. 41, 52–64, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)(statute "may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the

arbitrary deprivation of liberty interests."); *Gun Owners' Action League, Inc. v. Swift*, 284 F.3d 198, 205–206 (1st Cir.2002)("The principle underlying the doctrine is that 'no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.' "); *Balthazar v. Superior Court of Com. of Mass.*, 573 F.2d 698, 699–702 (1st Cir.1978)("Criminal statutes must be sufficiently specific to give fair notice of what conduct is proscribed."); *Lopez v. Spencer*, 961 F.Supp. 332, 335–336 (D.Mass.1997)("A vague statute violates due process because it fails to give fair warning of the conduct proscribed and engenders the possibility of arbitrary and discriminatory enforcement."). Law 94 is civil in nature and does not prohibit any sort of conduct, nor does it impose any penalties for noncompliance. Upon reaching this conclusion, it becomes unnecessary for the Court to reach any constitutional issues. *See Nat'l Pharmacies, Inc. v. Feliciano–de–Melecio*, 221 F.3d 235, 241 (1st Cir.2000).

Therefore, because plaintiffs' suffer no criminal or civil liability under Law 94, their attack based on the void for vagueness doctrine fails and their request for declaratory judgment must be denied.[7]

### 4. *Supplemental Jurisdiction*

Supplemental state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3), since no federal claims to ground original jurisdiction remain in this case.

### CONCLUSION

For the aforementioned reasons, the Court **GRANTS** defendants' motion to dismiss (Docket No. 19). Plaintiffs' federal claims are hereby dismissed **with preju-**

---

7. The Court notes that the criminal charges Torres was indicted with for his refusal to give up his position and return government property stemmed from penal statutes and not Law 94.

dice. Supplemental state law claims are dismissed **without prejudice.** Judgment shall enter accordingly.

IT IS SO ORDERED.